## Napier et al. v. Napier et al.

(Decided March 4, 1930.)

ROY W. HOUSE and WM. LEWIS for appellants.

MURRAY L. BROWN and JAMES H. JEFFRIES for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

John H. Napier died a resident of Clay county the owner of a large body of land in Clay county on which he resided and about 1,200 acres of land in Leslie county,

The farm in Clay county on which he resided was suitable for farming purposes, but the land in Leslie county and some of the land in Clay county near it was mountainous and valuable only for the timber and minerals on it. He left surviving him eleven children, or their descendants. Nine of his children and the descendants of one child, who was dead, filed this proceeding asking a division of the land. Two infants, the children of one daughter, who was dead, by their guardian resisted the division of the mountainous land on the ground that the property could not be divided without impairing the interest of the owners. Proof was taken. On final hearing the circuit court adjudged a division of the farming lands in Clay county. The division was made and that branch of the case is not before us. The court ordered a sale of the mountainous land. To this the plaintiffs excepted and have appealed.

Under section 490 of the Civil Code of Practice, land in such cases as this may be ordered sold where "the property cannot be divided without materially impairing its value or the value of the plaintiff's interest therein." It is earnestly insisted that the law favors the division of land rather than its sale and that the weight of the evidence is to the effect that the land may be divided. But in cases of this sort the court gives some weight to the judgment of the chancellor, who is on the ground and knows the local conditions and the value of the testimony of the witnesses. The chancellor here was a local man as well as a distinguished member of the bar, having years' experience in such matters. The witnesses all agree that the land is not suitable for agricultural purposes. There are only a few acres of little bottoms here and there that can be cultivated at all. The value of the land depends entirely upon the timber and minerals on or in it. It lies twenty-five miles from any railroad. The timber and minerals can only be utilized by getting them out. The evidence tends to show that the land is valuable for coal. But minerals are not evenly distributed in the earth. If this land was divided each heir would get about 110 acres; but some of these lots, which had no minerals on them, might be practically without value, while others would be of great value. There has been no examination of the land to show where the minerals are, and any division of the land made now might do great injustice. It does not appear that a test of the land could be made at a reasonable cost. The witnesses all agree

in fact that the land is only valuable for the timber and minerals. The weight of the evidence is that if it was cut up into eleven small tracts it would not be so salable as it would be as a whole, for the reason that no purchaser of a small tract could afford to go to the expense of building the roads necessary to get out the timber or coal. Under the proof to cut the property into eleven separate lots would make it less salable at a fair price; this shows that "the property cannot be divided without materially impairing its value," within the meaning of the statute. On all the facts the court is unwilling to disturb the finding of the circuit court.

Judgment affirmed.