IN RE MORAN'S ESTATE.
LaDUE, APPELLANT, v. MORAN, RESPONDENT.
No. 9225.
Submitted March 16, 1954. Decided July 8, 1954.
273 Pac. (2d) 671.

Messrs. Doepker and Hennessy, Mr. M. J. Doepker, Butte, for appellant.

Mr. Lyman H. Bennett, Jr., Bozeman, Mr. Chester Lloyd Jones, Virginia City, for respondent.

Mr. Doepker, Mr. Bennett and Mr. Jones argued orally.

MR. JUSTICE ANDERSON:

This cause resulted from an order allowing the partition of

certain property belonging to the estate of Charles Moran, deceased.

Partition for letters of administration in the estate of Charles Moran, deceased, were granted to Helen LaDue, appellant here and a daughter of the deceased. The next of kin and sole heirs of Charles Moran were Helen LaDue, Mary Peyton, Charles Moran, Leonard Moran, Florence Engar, Gertrude Rohr and Peter Moran, they being sons and daughters of the deceased. The property herein in dispute was to be shared alike by these persons.

Leonard Moran, one of the heirs, petitioned the district court asking that the court appoint commissioners as prescribed by R. C. M. 1947, sec. 91-4006, so that the estate may be partioned and distributed under assignment to him. The court subsequently appointed commissioners as provided by law and the appointed commissioners proceeded to carry out their duties, and among other things they determined that the real property here in question could not be divided without prejudice and they reported its true value to be $15,000 and recommended that the real property in question be assigned to Leonard Moran, the petitioner.

Objections to the report of the commissioners were made and the matter was set down by the court for hearing. The district court adopted and approved the commissioners' report and from this confirmation by the court Helen LaDue, one of the heirs of the estate, appeals. The principal grounds of objection was that the commissioners had ignored an offer of $25,000 for the same property, made to the commissioners at the time of the hearing to determine its value, and notwithstanding this offer, they fixed the value at $15,000; thus, as stated by appellant, bias and prejudice was shown in favor of Leonard Moran to the detriment of the objector.

On November 15, and 16, 1951, the commissioners and all interested parties met at the Moran ranch for the purpose of determining the value of the property in question. On November

16, 1951, the following offer on the property here in question was made.

"Sheridan, Montana
"November 16, 1951.

"We, the undersigned, do hereby agree to buy the Chas. Moran Ranch near Alder for $25,000.00, $2500.00 to be paid when contract is drawn up and the balance April first, 1952, or upon possession of ranch. This purchase includes home ranch, and one-third interest of eighty acres on Hinch Creek, also forest permit for 115 head of cattle.

"The sellers guarantee possession and clear title.

"Signed:
"Lester Wessel
"Eleanore Wessel."

The above offer was presented to Helen LaDue, administratrix, and at the time of the meeting held by the commissioners, the document was presented to said commissioners. Apparently no inquiry was made by the commissioners to find out if the offer was bona fide. Thereafter and at the hearing before the court on the objection to the commissioners' report the following documents were offered and placed in evidence:

"In the District Court of the Fifth Judicial District of the State of Montana, in and for the County of Madison.

"In the Matter of the Estate of

"Charles Moran, Deceased.

"Bill for Property on Partition of Estate.

"We, the undersigned, Lester Wessel and Eleanore Wessel, husband and wife, hereby offer to pay to the heirs of the above entitled estate or the estate of Charles Moran, deceased, the sum of Twenty-five Thousand Dollars ($25,000.00) for the following described real property:

"West half of Northeast quarter east half of Northwest quarter, and all that part of the Southeast quarter of the Northeast quarter lying West of the railroad right of way, all in Section 8, Township 6 South, Range 4 West, M. P. M., with all appurten-

ances, water rights and water contracts, and grazing rights and privileges therewith.

"An undivided one-third interest in SE¼ NW¼ and SW¼ NE¼, Section 1, Township 7 South, Range 5, West, M. P. M.

"It being understood that the above bid is for all the right, title and interest in said property held by Charles Moran, deceased, at the date of his death and also all right, title and interest that his estate may have subsequently acquired by operation of law or otherwise.

"The terms of the sale shall be $2500.00 cash on acceptance of this bid and the full cash balance on delivery of deeds to the property and possession thereof.

"Attached hereto and made a part of this bid are two letters of credit showing our ability to pay for the property above described.

"Dated this 11th day of December, 1951.

> "Lester Wessel
> "Eleanore Wessel

"State of Montana } ss.
"County of Madison }

"On this 11th day of December, 1951, before me, the undersigned, Notary Public for the State of Montana, personally appeared, Lester Wessel and Eleanore Wessel, husband and wife, known to me to be the persons whose names are subscribed to the foregoing instrument and they acknowledged to me that they executed the same.

"In Witness Whereof, I have hereunto set my hand and affixed my Notarial Seal the day and year in this certificate above written.

> "M. J. Doepker
> "Notary Public for the
>    State of Montana.
> "Residing at Butte, Montana
> "My Commission expires
>    September 26, 1952.

"(Notarial Seal)

"M. J. Doepker

"State of Montana."

  "First National Bank of Twin Bridges

"A. R. Smith, President

"George H. Reid, Vice Pres.

J. R. Mears, Cashier

Asa Ellis, Vice Pres.

"Walter Shires, Asst. Cashier

"Twin Bridges, Montana

"December 16, 1951.

"To Whom It May Concern:

  "This will certify that the First National Bank of Twin Bridges, Montana, is prepared to loan Lester Wessel, up to the sum of $20,000.00 on his present personal holdings.

"Very truly yours,

"J. R. Mears

J. R. Mears."

"Glens Falls Insurance Company

  "Glens Falls, N. Y.

"R. H. Griffith, Vice President

"R. Lynn Columb, Secretary

  "Pacific Coast Department,

  "Mills Tower, San Francisco 4,

"C. J. Ehlers

"Sheridan, Montana

"December 10, 1951.

"To Whom It May Concern:

  "This is to certify that through my loaning agency we are prepared to make a real estate loan up to $10,000.00 on approximately 200 acres of farm land and 1240 acres of grazing land. The application for the loan has been made by Lester Wessel on certain lands in Madison County.

"C. J. Ehlers."

At the time of the hearing on the objection to the commissioners' report Helen LaDue, one of the heirs of deceased and an

objector, made the following offer in the following language and concerning the property here in question:

"Q. Will you here in open court offer to accept the assignment of the whole of the real property of the Charles Moran estate with the appurtenances that go with it and as far as the real estate is concerned offer to pay prorata to the heirs a sum of money for the assignment of the whole of the real property of the estate? A. Yes. * * *

"Q. Now in connection with the appraisal made by the commissioners as to the Missoula County property, that is Lot 17, Block 20 of the East Missoula Addition of the City of Missoula. Are you willing to pay that appraisal, one hundred fifty dollars? A. Yes.

"Q. As to the undivided one-third interest in the SE¼NW¼ and the SW¼NE¼ of Section 1, Township 7 South, Range 5 West, are you willing to pay the appraisal fifty-three dollars and thirty-three cents? A. Yes.

"Q. As to the rest of the real property that is appraised in this report which is properly known as the Moran Ranch, what are you willing to pay for it? * * * A. Twenty-two thousand five hundred fifty dollars."

Leonard Moran, expecting his brothers and sisters to accept $2,142.86 each for their share of the estate, testified that he would not accept $5,000 for his share.

It is a well settled rule that where a partition has been made by commissioners, the court interferes with their action with reluctance. It is only where a clear mistake has been made that their proceedings will be interfered with. Cooper v. Long, 115 Okl. 286, 244 Pac. 167, 46 A. L. R. 343.

Ordinarily where the commissioners have arrived at a value and there is a showing that other persons think the property is of a higher value, the presumption is that the commissioners have acted fairly and honestly and the presumption must obtain unless overthrown by a clear preponderance of the evidence. See Aldrich v. Aldrich, 75 S. C. 369, 55 S. E. 887, 117 Am. St. Rep. 909.

R. C. M. 1947, sec. 91-4006, provides in part as follows: "On filing the report of the commissioners, and on making or securing the payment as before provided, the court or judge, if it appears just and proper, must confirm the report, and thereupon the assignment is complete, and the title to the whole of such real estate vests in the person to whom the same is assigned."

R. C. M. 1947, sec. 91-4010, provides as follows: "To make report, and partition to be recorded. The commissioners must report their proceedings, and the partition agreed upon by them, to the court or judge, in writing, and the court or judge may, for sufficient reasons, set aside the report and commit the same to the same commissioners, or appoint others; and when such report is finally confirmed, a certified copy of the order of partition made thereon, atttested by the clerk under the seal of the court, must be recorded in the office of the county clerk of the county where the lands lie."

It is clear that the judge must, if the report is just and proper, confirm the commissioners' report, but it is likewise the rule that the judge may, if sufficient reasons appear therefor, set aside the report.

Were the offers made by Helen LaDue and Lester and Eleanore Wessel, or either of said offers, sufficient reasons for the court below to set aside the commissioners' findings?

The obvious purpose of the statute having to do with partition of interests in estates is to see to it that the estate is disposed of so that each of the recipients thereof will get their just share and this does not mean that one of the recipients will receive an amount grossly out of proportion to the others.

R. C. M. 1947, sec. 91-4006, provides in part as follows: "When the real estate cannot be divided without prejudice or inconvenience to the owners, the court or judge may assign the whole to one or more of the parties entitled to the share therein, who will accept it, always preferring the males to the females, and, among children, preferring the elder to the younger."

This statute was intended to give the court a directive which

it could follow in the event the interests of all persons entitled to share in the estate are substantially the same.

In the instant case the appellant, Helen M. LaDue, agreed in effect in open court to accept the property here in question at a price wholly out of proportion to that fixed by the commissioners and this alone should have moved the judgment of the court. Helen M. LaDue is one of the persons entitled to a share of the estate.

In partition cases a party dissatisfied with the value at which ▌ the property is recommended to be assigned to another party may bring the property to a sale by making and securing a bid for a substantial advance in price over the value fixed by the commissioners. 68 C. J. S., Partition, sec. 169, page 279; Parrott v. Barrett, 81 S. C. 255, 62 S. E. 241; Moore v. Williamson, 10 Rich. Eq., S. C. 323, 73 Am. Dec. 93.

The offer of the Wessels was so far out of proportion to the ▌ value placed upon the property by the commissioners that the judge below should have refused to confirm the commissioners' report on the ground that the report was clearly based upon mistake.

The judgment of the lower court is reversed with directions to proceed in accordance with the doctrines herein announced.

MR. JUSTICES BOTTOMLY, FREEBOURN, and ANGSTMAN, concur.

MR. CHIEF JUSTICE ADAIR, dissents.